# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BLACK & DAVISON**, *et al.*, | : | CIVIL ACTION NO. 1:17-CV-688 |
| Plaintiffs | : | (Chief Judge Conner) |
| v. | : | |
| **CHAMBERSBURG AREA SCHOOL DISTRICT**, *et al.*, | : | |
| Defendants | : | |

## MEMORANDUM

Plaintiffs commenced this action against the Chambersburg Area School District ("school district"), as well as individual defendants Dana Baker, William Lennartz, Carl Barton, Edward Norcross, Joan Smith, Robert Floyd, Mark Schur, Kevin Mintz, Alexander Sharpe, and Dr. Joseph Padasak pursuant to 42 U.S.C. § 1983 and state law. (See Doc. 1). Before the court is defendants' motion to dismiss (Doc. 5) filed pursuant to Federal Rule of Civil Procedure 12(b)(6). The court will grant in part and deny in part defendants' motion.

### I. Factual Background & Procedural History

Plaintiff Black & Davison ("Black & Davison" or "the firm") is a law firm located in Chambersburg, Pennsylvania. (Doc. 1 ¶ 7). It consists of five equity partners—plaintiffs Jan G. Sulcove, Esq., Robert C. Schollaert, Esq. ("Attorney Schollaert"), Elliott B. Sulcove, Esq., Jerrold A. Sulcove, Esq., and Mark T. Orndorf, Esq. (Id.) Black & Davison served as the school district's solicitor from approximately 1968 through 2016. (Id. ¶¶ 20, 49). All of the firm's partners performed "solicitor duties" for the school district except for Attorney Schollaert.

(Id. ¶ 19). Until 2015, the school district retained Black & Davison as solicitor "via resolution of the [school board]." (Id. ¶ 22).

On or about May 27, 2015, Black & Davison and the school district entered into a "Solicitor Engagement Agreement" ("Agreement"), wherein the school district agreed, *inter alia*, to employ Black & Davison for the purpose of providing "legal expertise as [s]olicitor" from July 1, 2015 through June 30, 2018. (See Doc. 5-1 at 1; see also Doc. 1 ¶ 23). The parties agreed that the school district could terminate the Agreement for cause. (Doc. 5-1 ¶¶ 3.1, 5.1). Specifically, the school district could terminate the Agreement if Black & Davison: (1) failed to "maintain an accepted quality of legal services as determined by [the school district]"; (2) failed to "maintain a current unrestricted license to practice law in the Commonwealth of Pennsylvania;" (3) failed to "conduct itself with professional decorum;" or (4) received "any sanction imposed . . . as a result of the commission of any felony or misdemeanor involving moral turpitude." (Id. ¶ 5.1). The parties also agreed that the Agreement would be governed by Pennsylvania law. (Id. ¶ 10.5). Approximately 25% to 33% of Black & Davison's annual revenue resulted from its solicitor duties for the school district. (Doc. 1 ¶ 58).

The school board is comprised of nine elected voting members that serve four-year terms. (Id. ¶¶ 13, 28). The Superintendent of the school district serves as an additional, non-voting member. (Id.) Dr. Joseph Padasak is the current Superintendent. (Id. ¶¶ 11, 15). The school board approves "every personnel decision" for school district employees, including "hiring, firing, transfer, promotion, [and] demotion" decisions. (Id. ¶ 12).

2

In 2015, five school board seats were up for election. (See id. ¶¶ 27, 35). School board elections are "technically non-partisan" but "candidates may be endorsed by different political groups." (Id. ¶ 29). During the 2015 election, candidates were endorsed by one of two political faction groups: (1) Citizens for Value and Excellence in Education ("Citizens for Education"), a group made up mostly "moderate republicans," and (2) Common Sense. (Id. ¶¶ 30-32). Prior to the election, five of the school board's members were members of the Citizens for Education faction; the other four school board members were members of the Common Sense faction. (Id. ¶ 33).

The individual plaintiffs "engaged in campaign activities" to support the Citizens for Education candidates. (Id. ¶¶ 37-42). These activities included, among other things, "handing out campaign literature, taking constituents to the polls, [and] hanging [or] posting political signs." (Id. ¶ 37; see also id. ¶¶ 38-42). The Common Sense candidates took all five board seats at the election. (Id. ¶ 43). This resulted in a school board composed of eight Common Sense members and one Citizens for Education member. (Id.) On or about December 3, 2015, the new school board members were sworn into office. (Id. ¶ 45).

Shortly thereafter, the school board "purged" the school district of employees—including plaintiffs—who "openly supported" Citizens for Education even though "political affiliation was not an appropriate requirement" or "necessary" to the "efficient operation of their position[s]." (Id. ¶¶ 46-47). On March 23, 2016, the school board unanimously voted to terminate the Agreement with Black & Davison and informed plaintiffs by letter. (Id. ¶¶ 49-50). The board

3

claimed their decision was economically motivated but thereafter retained another law firm as temporary solicitor that charged more than Black & Davison. (Id. ¶¶ 51, 53-54). Plaintiffs contend that the school board's decision was "based solely on [plaintiffs'] support of the [Citizens for Education] ticket." (Id. ¶ 55).

Plaintiffs commenced the instant action on April 17, 2017. (Id.) Plaintiffs assert a First Amendment claim against all individual defendants (Count I) and the school district (Count II), a procedural due process claim against all defendants (Count IV), and a state law claim for breach of contract against the school district (Count III). (Id.) Defendants move to dismiss all claims for failure to state a claim upon which relief may be granted. See FED. R. CIV. P. 12(b)(6). The motion is fully briefed and ripe for disposition.

## II. Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. Cty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)). In addition to reviewing the facts contained in the complaint, the court may also consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994);

Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (alteration in original) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint, the court conducts a three-step inquiry. See Santiago v. Warminster Twp., 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. at 130 (alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). Next, the factual and legal elements of a claim must be separated; well-pleaded facts are accepted as true, while mere legal conclusions may be disregarded. Id. at 131-32; see Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 556. A claim is facially plausible when the plaintiff pleads facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

### III. Discussion

Plaintiffs assert claims against the school district and the individual defendants under Section 1983 for violation of their First Amendment and procedural due process rights. Plaintiffs also bring a state law breach of contract

claim against the school district.  Defendants challenge the sufficiency of each claim.  The court will address these claims *seriatim*.

   **A.   Section 1983 Claims**

Section 1983 of Title 42 of the United States Code creates a private cause of action to redress constitutional wrongs committed by state officials.  See 42 U.S.C. § 1983.  The statute is not a source of substantive rights, but serves as a mechanism for vindicating rights otherwise protected by federal law.  Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).  To state a claim under Section 1983, plaintiffs must show a deprivation of a "right secured by the Constitution and the laws of the United States . . . by a person acting under color of state law."  Kneipp, 95 F.3d at 1204 (quoting Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995)).  Defendants do not dispute that they were state actors at all times relevant herein.

Plaintiffs allege that defendants violated their First Amendment rights to speech and association by terminating the Agreement after plaintiffs supported candidates from the Citizens for Education faction.  Plaintiffs further allege that defendants violated their procedural due process rights under the Fourteenth Amendment by terminating the Agreement prior to the contractual expiration date of June 30, 2018.  They assert these claims against the school district and the individual defendants in their official and personal capacities.

   **1.   *First Amendment Claim Against the School District***

To establish a *prima facie* case of political patronage discrimination in violation of the First Amendment rights to speech and association, plaintiffs must

6

allege that: (1) they were "employed at a public agency in a position that does not require political affiliation;" (2) they were "engaged in constitutionally protected conduct;" and (3) such conduct was a "substantial or motivating factor in the government's employment decision." Galli v. N.J. Meadowlands Comm'n, 490 F.3d 265, 271 (3d Cir. 2007); see also Gulick v. City of Pittston, 995 F. Supp. 2d 322, 332 (M.D. Pa. 2014). If plaintiffs succeed in establishing a *prima facie* case, a defendant may avoid liability by proving that the "same employment action would have been taken" in the absence of protected activity. Galli, 490 F.3d at 271 (quoting Stephens v. Kerrigan, 122 F.3d 171, 176 (3d Cir. 1997)); see also Gulick, 995 F. Supp. 2d at 332.

Political affiliation may be a perfectly appropriate basis for hiring or firing when the position is deemed to be "policymaking," rendering political affiliation relevant to effective performance of the office involved. See Galli, 490 F.3d at 271; see also Branti v. Finkel, 445 U.S. 507, 518 (1980). To determine whether political affiliation is an appropriate consideration, the court should consider factors such as "whether the employee has duties that are non-discretionary or non-technical, participates in discussions or other meetings, prepares budgets, possesses the authority to hire and fire other employees, has a high salary, retains power over others, and can speak in the name of policymakers." Galli, 490 F.3d at 271 (citing Brown v. Trench, 787 F.2d 167, 169 (3d Cir. 1986)). The court must review and consider the intended "functions of the office in question and not the actual past duties of the particular employee involved." Boyle v. Cty. of Allegheny Pa., 139 F.3d 386, 397 (3d Cir. 1998) (citations and quotation marks omitted); see also O'Connor v. Steeves, 994 F.2d 905, 911 (1st Cir. 1993). Most important is whether the employee

7

has meaningful input into decisionmaking regarding the nature and scope of a major governmental program. Galli, 490 F.3d at 271 (citing Armour v. Cty. of Beaver Pa., 271 F.3d 417, 429 (3d Cir. 2001)). This inquiry is inherently fact-specific. See Wetzel v. Tucker, 139 F.3d 380, 383-84 (3d Cir. 1998) (citing Zold v. Twp. of Mantua, 935 F.2d 633, 635 (3d Cir. 1991)).

Defendants argue only that plaintiffs fail to allege sufficient facts to satisfy the first Galli prong. (See Doc. 12 at 6, 9).[1] They effectively concede that plaintiffs have alleged facts sufficient to satisfy the remaining two prongs. (See id. at 6-9). We agree. (See, e.g., Doc. 1 ¶¶ 37-42, 45-46, 49-51, 53-55). Hence, the sole issue is whether plaintiffs adequately allege that political affiliation is an inappropriate requirement for the solicitor position.

Plaintiffs contend that political affiliation is neither "an appropriate requirement" for the solicitor position, nor is it "necessary for the efficient operation" of the solicitor position. (See id. ¶ 47). Plaintiffs' contention, albeit conclusory, is buttressed by the fact that Black & Davison has been the solicitor for the school district for almost 50 years. (Id. ¶ 20; Doc. 18 at 5). The length of Black & Davison's tenure suggests, as argued by plaintiffs, that the solicitor position "is not one which shift[s] with the political winds." (Doc. 18 at 5). Further, both parties agree that school board elections are non-partisan. (See Doc. 1 ¶ 29; Doc. 7 at 3). In

---

[1] Plaintiffs argue that defendants waived this argument by raising it for the first time in their reply brief. (Doc. 18 at 5-6). We disagree. A finding of waiver is appropriate only if the non-moving party does not have an opportunity to respond to the moving party's new argument. See Tristate HVAC Equip., LLP v. Big Belly Solar, Inc., 752 F. Supp. 2d 517, 529 n.8 (E.D. Pa. 2010). Plaintiffs had an opportunity to respond to defendants' argument in their sur-reply (Doc. 18).

8

light of these facts, and drawing all inferences in the light most favorable to plaintiffs, we find that plaintiffs have sufficiently alleged that political affiliation is not an appropriate requirement for the position of school district solicitor. We further find that whether political affiliation is an appropriate requirement for a given position is a fact-intensive inquiry better suited for summary judgment. See Burkley v. Mun. Auth. of Westmoreland Cty., 999 F. Supp. 2d 669, 677 (W.D. Pa. 2014). Accordingly, we will deny defendants' motion to dismiss the First Amendment claim against the school district.

### 2. *Procedural Due Process Claim Against the School District*

The Due Process Clause of the Fourteenth Amendment prohibits states from depriving any person of "life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. To prevail on a Section 1983 procedural due process claim, a plaintiff must demonstrate that (1) he or she was deprived of a protected liberty or property interest under the Fourteenth Amendment, and (2) the procedures afforded him or her failed to comport with the requirements of due process. Hill v. Borough of Kutztown, 455 F.3d 225, 233-34 (3d Cir. 2006) (citing Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000)).

Plaintiffs assert that defendants deprived them of a property interest in their guaranteed employment as school district solicitor through June 30, 2018 as stated in the Agreement. (Doc. 1 ¶¶ 2-3; Doc. 7 at 12-13). A property interest protected by the Fourteenth Amendment exists only if the plaintiff has "a legitimate claim of entitlement" to the interest. Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 577 (1972); Hill, 455 F.3d at 234. Property interests entitled to constitutional protection

9

are created from "independent source[s]", such as state law. Burella v. City of Phila., 501 F.3d 134, 141 (3d Cir. 2007) (quoting Roth, 408 U.S. at 577).

Under Pennsylvania law, protected property interests arise in three ways: *first*, through legislative action or authorization, see Dee v. Borough of Dunmore, 549 F.3d 225, 229-30 (3d Cir. 2008); Pivarnik v. Commonwealth, Dep't of Transp., 474 A.2d 732, 734 (Pa. Commw. Ct. 1984); *second*, through a contract that grants the plaintiff protected status, such as employment tenure or welfare benefits, see Unger v. Nat'l Residents Matching Program, 928 F.2d 1392, 1399 (3d Cir. 1991); and *third*, through a contract permitting termination only for cause, see id.; see also Linan-Faye Constr. Co. v. Hous. Auth. of Camden, 49 F.3d 915, 932 (3d Cir. 1995). Plaintiffs do not allege that they have a protected property interest in employment through June 30, 2018 pursuant to action or authorization by the General Assembly. And the Agreement does not fall into either of the two categories of contracts recognized by the Third Circuit as creating a constitutionally protected property interest.

The Agreement does not grant plaintiffs a protected status characterized by either "extreme dependence" or "permanence" that plaintiffs rely on in daily life. See Baraka v. McGreevey, 481 F.3d 187, 207-08 (3d Cir. 2007); see also Seacrist v. Skrepenak, No. 3:07-CV-2116, 2009 WL 959640, at *5 (M.D. Pa. Apr. 6, 2009). Plaintiffs have not alleged that their "day-to-day survival" as a law firm is threatened by defendants' failure to engage them as attorneys through June 30, 2018. See Piekutowski v. Twp. of Plains, No. 3:05-CV-2078, 2006 WL 3254536, at *5 (M.D. Pa. Nov. 9, 2006). Indeed, plaintiffs concede that Black & Davison's revenue from solicitor duties performed for the school district represent only a portion of the

firm's annual revenue—"approximately 25% [to] 33%."  (Doc. 1 ¶ 58).  They further concede that Attorney Schollaert, one of Black & Davison's five equity partners, has never done solicitor work for the school district.  (See Doc. 1 ¶ 19).  Additionally, the Agreement was for a fixed term of three years.  (See Doc. 5-1 ¶ 3.1).

Finally, although the Agreement, on its face, states that it could only be terminated for cause, (see Doc. 5-1 ¶ 5.1), this provision contravenes Pennsylvania law.  See Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C., __ A.3d __, No. 6 WAP 2017, 2018 WL 1161550, at *7 (Pa. Mar. 6, 2018); Angino & Rovner v. Jeffrey R. Lessin & Assocs., 131 A.3d 502, 508 (Pa. Super. Ct. 2016).  Pennsylvania law vests in the client "the absolute right to terminate an attorney-client relationship, regardless of any contractual arrangement between the two parties."  Angino, 131 A.3d at 508 (quoting Kenis v. Perini Corp., 682 A.2d 845, 849 (Pa. Super. Ct. 1996)); see also PA. RULES OF PROF'L CONDUCT 1.16 cmt. 4.

Plaintiffs were not deprived of a constitutionally protected interest because they did not have a legitimate claim of entitlement to continued employment with the school district through June 30, 2018.[2]  The court will grant defendants' motion to dismiss the procedural due process claim against the school district.

---

[2] Defendants argue that plaintiffs do not have a "property interest in future employment as solicitor" because that interest was based on an Agreement that "was void at its inception and unenforceable" due to the termination clause.  (See Doc. 6 at 7-8).  We decline to consider this argument in light of the Agreement's severability clause.  (See Doc. 5-1 ¶ 10.3).

11

### 3. *Claims Against the Individual Defendants in Their Official Capacities*

A suit against a government official in his or her official capacity is synonymous with a claim against the government entity itself. See Kentucky v. Graham, 473 U.S. 159, 165 (1985) (quoting Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 n. 55 (1978)); Hill, 455 F.3d at 233 n. 9; Gregory v. Chehi, 843 F.2d 111, 120 (3d Cir. 1988). If a plaintiff asserts claims against both a government entity and the entity's agents in their official capacity, the court should dismiss the official-capacity suits. See Lopez v. Maczko, No. 07-1382, 2007 WL 2461709, at *7 (E.D. Pa. Aug. 16, 2007); Johnston v. Dauphin Borough, No. 1:05-CV-1518, 2006 WL 1410766, at *4 (M.D. Pa. May 22, 2006) (Conner, J.); Abdullah v. Fetrow, No. 1:05-CV-1135, 2006 WL 1274994, at *4 (M.D. Pa. May 8, 2006) (same). Plaintiffs' First Amendment and procedural due process claims against the individual defendants in their official capacities duplicate their claims against the school district and will be dismissed.

### 4. *Claims Against the Individual Defendants in Their Personal Capacities*

Defendants argue that all claims against the individual defendants in their personal capacities must be dismissed. (Doc. 6 at 9-10). They raise a singular challenge to the personal capacity claims, contending that "'[p]laintiffs' allegations are directed at the board as a whole and in no way articulate how . . . the board members acted in their individual capacity." (Id. at 9). We disagree.

Individual defendants sued in their personal capacity "cannot avoid liability on a [S]ection 1983 claim by asserting that their actions were taken as part of their official duties." Kohn v. Sch. Dist. of City of Harrisburg, 817 F. Supp. 2d 487, 510

(M.D. Pa. 2011); see also Damiano v. Scranton Sch. Dist., 135 F. Supp. 3d 255, 269 (M.D. Pa. 2015). Plaintiffs aver that the school board members "voted unanimously to terminate" the Agreement. (Doc. 1 ¶ 49). This is sufficient personal involvement to establish plausible liability as to the voting school board members. See Linskey v. Guariglia, No. 3:11-2059, 2012 WL 1268913, at *5 (M.D. Pa. Apr. 16, 2012) (citing Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)). However, we find that plaintiffs have not alleged sufficient personal involvement as to Superintendent Padasak—a non-voting member of the school board. (Cf. Doc. 1 ¶¶ 11, 13, 15).

Accordingly, we will grant defendants' motion to dismiss plaintiffs' Section 1983 claims as to Superintendent Padasak in his personal capacity. We will also grant defendants' motion to dismiss the procedural due process claim against the remaining individual defendants in their personal capacities. That claim fails for the same reasons set forth anent the school district *supra*. We will deny defendants' motion to dismiss the First Amendment claim against the remaining individual defendants in their personal capacities.

### B. State Law Breach of Contract Claim

Plaintiffs aver that the school district is liable for breach of contract for terminating the Agreement prematurely and for reasons "not permitted under the contract." (Doc. 1 ¶¶ 71-72; see also Doc. 7 at 10-12). As stated, under Pennsylvania law, "a client has the absolute right to terminate an attorney-client relationship, regardless of any contractual arrangement between the two parties." Angino & Rovner, 131 A.3d at 508 (quoting Kenis, 682 A.2d at 849); see also PA. RULES OF PROF'L CONDUCT 1.16 cmt. 4. This right "is an implied term of every attorney-client

13

engagement contract" such that "when a client exercises this implied contractual term it is *not* a breach of contract."  <u>Angino</u>, 131 A.3d at 508-09 (internal citations and quotation marks omitted) (emphasis added).  However, a terminated attorney may bring a claim "in *quantum meruit* to recover his [or her] fees."  <u>Id.</u>  Accordingly, we must grant defendants' motion to dismiss plaintiffs' breach of contract claim, but plaintiffs may file an amended complaint, as they request in the alternative, to add a *quantum meruit* claim.  (<u>See</u> Doc. 7 at 12 n.4).

## IV. <u>Conclusion</u>

The court will grant in part and deny in part defendants' motion (Doc. 5) to dismiss.  An appropriate order shall issue.

     /S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:    March 30, 2018