# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BLACK & DAVISON,** *et al.*, | : | CIVIL ACTION NO. 1:17-CV-688 |
| Plaintiffs | : | (Chief Judge Conner) |
| v. | : | |
| **CHAMBERSBURG AREA SCHOOL DISTRICT,** *et al.*, | : | |
| Defendants | : | |

## MEMORANDUM

Plaintiffs commenced this action against defendant Chambersburg Area School District ("School District") and the individual members of its board of directors pursuant to 42 U.S.C. § 1983 and common law *quantum meruit*. (See Doc. 24). Defendants move to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 25).

## I.   Factual Background & Procedural History[1]

Plaintiff Black & Davison ("Black & Davison" or "the firm") is a law firm located in Chambersburg, Pennsylvania. (Doc. 24 ¶ 7). It consists of five equity partners—plaintiffs Jan G. Sulcove, Esq., Robert C. Schollaert, Esq., Elliott B. Sulcove, Esq., Jerrold A. Sulcove, Esq., and Mark T. Orndorf, Esq. (Id.) Black & Davison served as the School District's solicitor from approximately 1968 through

---

[1] The court issued a memorandum opinion and order on defendants' motion to dismiss the initial complaint dated March 30, 2018. See Black & Davison v. Chambersburg Area Sch. Dist., No. 1:17-CV-688, 2018 WL 1566666 (M.D. Pa. Mar. 30, 2018). The court presumes familiarity with the factual background from that opinion, which is substantially restated below.

2016.  (Id. ¶¶ 19, 50).  All but one of the firm's partners performed "solicitor duties" for the School District.  (Id. ¶ 18).  Until 2015, the School District retained Black & Davison as solicitor "via resolution of the [school board]."  (Id. ¶ 21).

On or about May 27, 2015, Black & Davison and the School District entered into a "Solicitor Engagement Agreement" ("Agreement"), wherein the School District agreed, *inter alia*, to employ Black & Davison for the purpose of providing "legal expertise as [s]olicitor" from July 1, 2015 through June 30, 2018.  (See Doc. 5-1 at 1; Doc. 24 ¶¶ 22-23).  According to plaintiffs, Black & Davison derived between 25 and 33 % of its annual revenue from its solicitor duties to the School District.  (Doc. 24 ¶ 65).

The School District's board is comprised of nine elected voting members that serve four-year terms.  (See id. ¶¶ 10, 29).  The school board approves "every personnel decision" for School District employees, including "hiring, firing, transfer, promotion, [and] demotion" decisions.  (Id. ¶ 11).  In 2015, five board seats were up for election.  (See id. ¶¶ 35-36).  School board elections are "technically non-partisan" but "candidates may be endorsed by different political groups."  (Id. ¶ 30).  Two political faction groups endorsed candidates during the 2015 election: (1) Citizens for Value and Excellence in Education ("Citizens for Education"), a group made up mostly of "moderate republicans," and (2) Common Sense.  (Id. ¶¶ 31-33).  Prior to the election, five members of the school board were members of the Citizens for Education faction; the other four school board members were of the Common Sense faction.  (Id. ¶ 34).

The individual plaintiffs "engaged in campaign activities" to support the Citizens for Education candidates. (Id. ¶¶ 38-43). These activities included, among other things, "handing out campaign literature, taking constituents to the polls, [and] hanging [or] posting political signs." (Id. ¶ 38). The Common Sense candidates took all five board seats in the election. (Id. ¶ 44). This resulted in a school board composed of eight Common Sense members and one Citizens for Education member.[2] (Id. ¶ 45).

The new school board members were sworn into office on or about December 3, 2015. (Id. ¶ 46). Shortly thereafter, the board "purged" the School District of employees—including plaintiffs—who "openly supported" Citizens for Education even though "political affiliation was not an appropriate requirement" or "necessary" to the "efficient operation of their position[s]." (Id. ¶¶ 47-49). On March 23, 2016, the school board unanimously voted to terminate the Agreement with Black & Davison and informed plaintiffs by letter. (Id. ¶¶ 50, 54). The board claimed that their decision was economically motivated but thereafter retained another law firm as temporary solicitor that charged more than Black & Davison. (Id. ¶¶ 55, 60). Plaintiffs contend that the school board's decision was "based solely on [plaintiffs'] support of the [Citizens for Education] ticket." (Id. ¶ 62).

Plaintiffs initiated the instant action on April 17, 2017. After the court's ruling on defendants' first motion to dismiss, plaintiffs filed an amended complaint

---

[2] Defendants note that Kevin Mintz is, in fact, a member of the Citizens for Education faction, (Doc. 27 at 12 n.3), which results in a school board composed of seven Common Sense members and two Citizens for Education members.

3

on April 18, 2018. Therein, plaintiffs assert a First Amendment claim against the individual school board members (Count I) and the School District (Count II), and a *quantum meruit* claim against the School District (Count III). Defendants move to dismiss Count I and Count III for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). The motion is fully briefed and ripe for disposition.

II. **Legal Standard**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)). In addition to reviewing the facts contained in the complaint, the court may also consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (alteration in original) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint, the court conducts a three-step inquiry. See Santiago v. Warminster Township, 629 F.3d 121, 130-31

4

(3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. at 130 (alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). Next, the factual and legal elements of a claim must be separated; well-pleaded facts are accepted as true, while mere legal conclusions may be disregarded. Id. at 131-32; see Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 556. A claim is facially plausible when the plaintiff pleads facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

### III. Discussion

Defendants raise two principal arguments. First, the School District challenges the sufficiency of the *quantum meruit* claim. Second, the individual defendants contend that they are entitled to qualified immunity and that one member of the school board, defendant Edward Norcross ("Norcross"), did not participate in the actions underlying plaintiffs' claims. The court will address these arguments *seriatim*.

#### A. Quantum Meruit

A *quantum meruit* claim for damages is rooted in an equitable claim of unjust enrichment. Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C., 179 A.3d 1093, 1102 (Pa. 2018). A party seeking recovery for unjust enrichment must show: (1) the benefits conferred on the defendant by the

5

plaintiff; (2) appreciation of said benefits by the defendant; and (3) "the acceptance and retention of said benefits under such circumstances that it would be inequitable for the defendant to retain the benefit without payment of value." Id. (citing Shafter Elec. & Constr. v. Mantia, 96 A.3d 989, 993 (Pa. 2014)). It is well established that a client may terminate their attorney at any time irrespective of a contract. Id. (citation omitted). An attorney may, however, bring a claim in *quantum meruit* to recover "a proper amount" for services already rendered. Id. at 1103 (citation omitted).

Plaintiffs identify a benefit conferred on the School District, to wit: the performance of over 1,000 hours of work. (Doc. 24 ¶¶ 59, 80). But fatal to plaintiffs' claim is their failure to allege that any benefit was unjustly appreciated by the School District *without compensation* to plaintiffs. (See Doc. 24); c.f. Loeffler Thomas P.C. v. Fishman, No. 15-5194, 2016 WL 1457895, at *11 (E.D. Pa. Apr. 12, 2016). Stated another way, the amended complaint does not specify which, if any, of those 1,000 hours went uncompensated. (See Doc. 24 ¶¶ 59, 61; see also Doc. 32 at 10-12). Plaintiffs also do not allege that the School District missed any payments on the retainer owed to plaintiffs for the period preceding their termination. (See Doc. 24).

Plaintiffs additionally assert they are entitled to recover "a $5,000 monthly retainer for the remainder of the contract term" (two years) and "fees" plaintiffs "would have reasonably been expected to generate" for the remainder of the

6

contract term.[3] (Doc. 24 ¶ 80; see Doc. 5-1 at 2). *Quantum meruit* provides recovery for services the attorney has rendered, not recovery for expectation damages. See Meyer, 179 A.3d at 1103. Plaintiffs may not seek recovery for damages in *quantum meruit* for the anticipated monthly retainer fees expected for the remainder of the contract term.

Plaintiffs rely upon Ryan v. Butera, Beausang, Cohen & Brennan, 193 F.3d 210 (3d Cir. 1999), for the proposition that a law firm may be entitled to "monies [beyond] simply services rendered" as well as "retainer monies." (Doc. 32 at 11). Ryan is inapposite. In Ryan, the Third Circuit concluded that an attorney has a right to keep a non-refundable general retainer fee after termination. Ryan, 193 F.3d at 215-16, 219. In the instant matter, plaintiffs seek additional retainer monies under the Agreement which provided for an "annual, non-refundable retainer of [$60,000]" to be paid on a monthly basis in $5,000 installments to Black & Davison. (Doc. 5-1 at 2). As stated above, the retainer fees plaintiffs seek for the remaining two years of the contract constitute expectation damages which are not an available remedy in *quantum meruit*.

---

[3] Plaintiffs also argue that, for work already performed, they are entitled to recover the difference between their negotiated hourly fee of $130 and the $150 fee they initially sought during contract negotiation. (Doc. 32 at 12). Plaintiffs fail to address why, under a theory of unjust enrichment, they are entitled to seek an additional $20 per hour for work performed when they purportedly received consideration of $5,000 per month in exchange for that fee reduction during the time period those hours were logged. (See Doc. 24 ¶ 59). Furthermore, this theory of recovery is absent from plaintiffs' amended complaint. (See Doc. 24).

7

### B. Qualified Immunity

The individual defendants invoke qualified immunity in response to plaintiffs' First Amendment claim. Qualified immunity protects a state actor who has committed a constitutional violation if the plaintiff's rights were not "clearly established" when the individual acted. Pearson v. Callahan, 555 U.S. 223, 231-32 (2009). No liability will attach if a reasonable state actor could have believed the challenged conduct was in compliance with settled law. See id. The doctrine cloaks government officials with "immunity from suit rather than a mere defense to liability," Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (emphasis omitted), and "ensure[s] that insubstantial claims against government officials [will] be resolved prior to discovery." Pearson, 555 U.S. at 231-32 (quoting Anderson v. Creighton, 483 U.S. 635, 640 n.2 (1987)). The defense generally "protects 'all but the plainly incompetent or those who knowingly violate the law.'" Ashcroft v. al-Kidd, 563 U.S. 731, 743, (2011) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)). The burden to establish qualified immunity rests with the defendant claiming its protection. Beers-Capitol v. Whetzel, 256 F.3d 120, 142 n.15 (3d Cir. 2001) (citing Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 726 (3d Cir. 1989)).

A court evaluating a claim of qualified immunity considers a two-pronged inquiry: whether, based on the facts alleged, a constitutional right has been violated and, if so, whether that right was "clearly established" at the time of the alleged violation. See Spady v. Bethlehem Area Sch. Dist., 800 F.3d 633, 637 (3d Cir. 2015) (quoting Pearson, 555 U.S. at 232). A court may begin its qualified immunity analysis with either prong. See Pearson, 555 U.S. at 239. Plaintiffs plead sufficient

facts to support their allegation that the individual defendants violated plaintiffs' First Amendment rights of speech and association by terminating them based on political affiliation. See Black & Davison v. Chambersburg Area Sch. Dist. No. 1:17-CV-688, 2018 WL 1566666, at *3-4 (M.D. Pa. Mar. 30, 2018) (Conner, C.J.). The only remaining inquiry is whether that right was clearly established at the time of the alleged violation.

The Supreme Court of the United States has repeatedly admonished that, when analyzing qualified immunity, courts should not "define clearly established law at a high level of generality." al-Kidd, 563 U.S. at 742; see also Kisela v. Hughes, 584 U.S. __, 138 S. Ct. 1148, 1152-53 (2018); Mullenix v. Luna, 577 U.S. __, 136 S. Ct. 305, 308 (2015). A plaintiff need not produce a case directly on point, but existing precedent must have placed the constitutional question "beyond debate." Mullenix, 136 S.Ct. at 308 (quoting al-Kidd, 563 U.S. at 741, 131 S. Ct. 2074). The state actor must have "fair notice" that his or her conduct was impermissible under federal law; thus, the reasonableness of his or her actions "is judged against the backdrop of the law at the time of the conduct." Kisela, 138 S. Ct. at 1152.

The appropriate inquiry is whether the Constitution prohibited the state actor's conduct in "the specific context of the case," *viz*., the situation the state actor confronted. Mullenix, 136 S. Ct. at 308-09 (citing Haugen v. Brosseau, 543 U.S. 194, 199-200 (2004)). A court must "frame the precise contours" of the right at issue before determining whether that right is clearly established. Spady, 800 F.3d at 638. The specific contours of the issue in the present action are as follows: whether a school district solicitor has a constitutionally protected right against termination by

9

the school district on the basis of political affiliation.  (See Doc. 24 ¶¶ 68-70; Doc. 27 at 14; Doc. 32 at 19).

The Third Circuit previously held that political affiliation is an appropriate job requirement for municipal solicitors occupying a policymaking role.  See Wetzel v. Tucker, 139 F.3d 380, 386 (3d Cir. 1998); Ness v. Marshall, 660 F.2d 517, 522-23 (3d Cir. 1981).  Whether political affiliation is an appropriate requirement for a particular solicitor position is a fact intensive inquiry, falling far short of clearly established law.  See Wetzel, 139 F.3d at 383-84.  Plaintiffs argue that the qualified immunity determination in this case is more properly reserved for summary judgement because discovery is necessary to ascertain whether political affiliation was an appropriate requirement for the School District solicitor position, and discovery may also reveal that the individual defendants knowingly violated the law in terminating plaintiffs.  (Doc. 32 at 15).  We agree.

Qualified immunity does not protect a state actor's knowing violation of the law.  al-Kidd, 563 U.S. at 743.  And determination of the objective reasonableness of a defendant's judgment about an open legal question may require resolution of factual disputes.  Curly v. Klem, 298 F.3d 271, 278 (3d Cir. 2002).  Plaintiffs asseverate that defendants provided a pretextual reason for terminating the Agreement, *viz.*, "to save money."  (Doc. 24 ¶ 55).  The school board then hired a solicitor which charged a higher hourly rate than plaintiffs.  (Id. ¶ 60).  Moreover, defendants now assert that political patronage was a reasonable basis for terminating plaintiffs.  (Doc. 27 at 14).  Viewing these factual allegations in the light most favorable to plaintiffs, the amended complaint articulates a plausible claim

10

that the individual defendants knowingly violated plaintiffs' First Amendment rights, which may foreclose the protections of qualified immunity.

### C. Edward Norcross

Defendants argue that Norcross did not participate in Black & Davison's termination, relying on portions of the school board's March 23, 2016 meeting minutes appended to their instant motion. (See Doc. 27 at 12; Doc. 25-2). In deciding a Rule 12(b)(6) motion, the court must consider only "the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer, 605 F.3d at 230. Accordingly, we will not consider defendants' proffered materials at this time. See In re Processed Egg Prods. Antitrust Litig., No. 08-MD-2002, 2012 WL 1443625, at *4 n.4 (E.D. Pa. April 24, 2012). Plaintiffs aver that "[a]ll of the individual defendants on the board voted for . . . [or] knowingly acquiesced" to plaintiffs' termination. (Doc. 24 ¶ 51). We again find that plaintiffs have adequately pled that Norcross was personally involved in the termination decision. See Black & Davison, 2018 WL 1566666, at *6.

## IV. Conclusion

The court will grant in part and deny in part defendants' motion (Doc. 25) to dismiss. An appropriate order shall issue.

        /S/ CHRISTOPHER C. CONNER
        Christopher C. Conner, Chief Judge
        United States District Court
        Middle District of Pennsylvania

Dated: January 24, 2019