### IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BLACK & DAVISON, JAN G. SULCOVE, ESQUIRE, ROBERT C. SCHOLLAERT, ESQUIRE, ELLIOTT B. SULCOVE, ESQUIRE, JERROLD A. SULCOVE, ESQUIRE, MARK T. ORNDORF, ESQUIRE, <br><br>                    Plaintiffs, <br><br>     v. <br><br> CHAMBERSBURG AREA SCHOOL DISTRICT, DANA BAKER, WILLIAM LENNARTZ, CARL BARTON, EDWARD NORCROSS, JOAN SMITH, ROBERT FLOYD, MARK SCHUR, KEVIN MINTZ, ALEXANDER SHARPE, <br><br>                    Defendants. | **CIVIL ACTION** <br><br> **NO. 1:17-CV-00688-CCC** <br><br> **(BEFORE THE HONORABLE CHIEF JUDGE CHRISTOPHER C. CONNER)** |

### DEFENDANTS' STATEMENT OF MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT PURSUANT TO LOCAL RULE 56.1

Defendants, by and through their counsel, Fowler Hirtzel McNulty & Spaulding, LLP, respectfully file this Statement of Material Facts accompanying their Motion for Summary Judgment, pursuant to Local Rule 56.1, and in support thereof, aver as follows:

1. As set forth more fully within Defendants' Brief in Support of their Motion for Summary Judgement, the factual background surrounding the instant litigation requires the analysis of a complicated social and political history of the Chambersburg Area School District, a growing desire for change, and Plaintiffs' embodiment of a longstanding status quo which culminated in the electorate's overwhelming rejection of said status quo within the May 2015 Primary School Board Election.

{W0930418.1}

**Historical Background – Black & Davison**

2. Plaintiffs allege that they were the District Solicitor for the Chambersburg Area School District between 1971 and 2015. ECF. No. 24 at ¶ 19.

3. Until 2014, Plaintiffs did not have a written contract with the School District, rather, informal letters were exchanged between Plaintiffs and the School District and their role as Solicitor would then be added to the School Board agenda for vote. A true copy of the deposition transcript of Black & Davison's managing partner, Plaintiff Jan Sulcove, is attached hereto as **Exhibit A**. See Exhibit A, pg. 72.

4. Not coincidentally, around this same time in 2014, when Plaintiffs first-ever contract was executed, there was also a movement within the School Board to pursue a Request for Solicitor Proposals ("RFP").  True and correct copies of the March 26, 2014, School Board Meeting Minutes evidencing the motion to pursue a 2014 Solicitor RFP have been attached hereto as **Exhibit B**. See Exhibit B, at #6.05.

5. The movement in 2014 to seek proposals to replace Black & Davison as solicitor occurred before there were any "political factions" and any election campaigning by any of the Plaintiffs.  See Exhibit A, pg. 272.

6. In May 2015, new school board candidates ("Common $ense") who, like four incumbent board members (Carl Barton, Joan Smith, Ed Norcross, and Dana Baker), were dissatisfied for a litany of reasons with the direction and decisions of the District under the Solicitor's counsel, swept the May 2015 primary School Board election. See ECF No. 24, ¶ 24.

7. Immediately thereafter, on May 27, 2015, with the vote/support of the Board members who just lost the election (the "CVEE" group for which plaintiffs campaigned vigorously), who were still a majority, Plaintiffs entered into a never before seen three year

contract with the School District, placing for cause termination provisions within the contract that contravened Pennsylvania Law. A true copy of this 2015 three year contract is been attached hereto as **Exhibit C**. See Exhibit C; See also ECF No. 22, pg. 11.

8. Plaintiffs claim that the 2015 three year contract was entered into as an inducement for Plaintiffs' to accept a lower hourly rate (see ECF No. 24, ⁋ 24), however, there are no facts of record to support this assertion. Rather, true and correct copies of communications evidencing Plaintiffs' seeking both a three year term and lower contractual rates throughout the process which led to this 2015 contract have been attached hereto as **Exhibit U**.

9. At the March 23, 2016, School Board meeting, the new Board members who were present voted unanimously to release Plaintiffs from their duties as Solicitor, complying with the 90 day Notice requirements of the Contract. A true copy of the March 23, 2016 board minutes have been attached hereto as **Exhibit D**. See Exhibit D at #10.01; See Exhibit C, at "VI. Separation."

10. Board member and Defendant Ed Norcross was not present at this meeting and did not participate in the vote to approve that solicitor services with Plaintiffs be discontinued. See Exhibit D, at Roll Call & #10.01; Exhibit W, infra, pgs. 39, 44.

**Chambersburg Area School District Solicitor**

11. The position of Solicitor for the Chambersburg Area School District encompassed a litany of duties.

12. Chiefly among the responsibilities of the District's Solicitor would be the responsibility to advise the District and make policy for the District when necessary. True copies of email correspondence illustrating Plaintiffs' involvement advising and policymaking for a broad range of issues have been attached hereto as **Exhibit T**. See Exhibit A, pg. 235.

13. The position of Solicitor in this District under Plaintiffs' counsel evolved to the point that the District looked to the Solicitor to advise and prepare policy focusing on matters from: First amendment issues regarding the Confederate Flag, School Board code of conduct, confidentiality, communication policies, separation of church and state issues regarding secular holiday concerts, school logo trademark issues, athletic booster club issues, and policies regarding opioid reversal (Naloxone). See Exhibit T.

14. The breadth of involvement of the Solicitor in formulating this advice and associated policies show that the District Solicitor was an essential figure in formulating plans for implementing broad goals for the District.

15. Per John Freund, III, Esquire, a school law expert and attorney with expertise in School District and School Board matters with over 40 years of experience spanning 22 District Solicitorships, due to the close relationship between Solicitors and policy agendas, School Boards are entitled to legal counsel who have compatible policy agenda views and will be loyal and provide zealous and competent representation. A true and correct copy of Mr. Freund's affidavit has been attached hereto as **Exhibit Y**. See Exhibit Y, ⁋ 22-24.

16. Prior to the election in 2015 Plaintiffs also frequently politicized their policymaking powers to prepare, and recommend to the then majority, censures and policies which rebuked the minority board members (all "Common $ense" members) who opposed the Solicitor and the majority of the school board's policies. See Exhibit A, pg. 63; Exhibit T.

**Historical Background – Chambersburg Area School District**

17. As early as 2003, community members were lobbying to try to change the direction of the Chambersburg Area School District which, generally speaking, focused on the status quo's perceived wasteful spending within the District. A true copy of the deposition transcript of Jack

Sharpe, community member, local attorney and father of current board member Alex Sharpe, is attached hereto as **Exhibit E**. See Exhibit E, pg. 7; Exhibit A, pg. 41.

18.     This status quo, was personified by individuals who were long time district representatives, like Board Member Stanley Helman who was in his position of power at the District for 20+ years and Black & Davison who were "enmeshed" with this status quo, by virtue of their forty-plus year tenure as District Solicitor. See Exhibit V, infra, pgs. 21-22, 108.

19.     The first School Board member who took up this cause to change the status quo was Defendant Carl Barton, who was on the board for many years, beginning in 2008, long before the 2015 election. See Exhibit A, pg. 43.  A true copy of Carl Barton's deposition transcript has been attached hereto as **Exhibit Z**. See Exhibit Z, pg. 7.

20.     Defendant Joan Smith, elected to the Board in 2011, was the second board member who, with Barton, was "going to take whatever actions they thought appropriate to cut wasteful spending." See Exhibit A, pgs. 42-43. A true copy of Defendant Joan Smith's deposition transcript has been attached hereto as **Exhibit V**.

21.     Prior to gaining additional board support, both Carl Barton and Joan Smith experienced difficulty being taken seriously by the Solicitor and previous board regimes because they "did not fall in line" with the longstanding status quo. See Exhibit V, pgs. 19, 90.

22.     Barton and Smith were not an isolated minority, however, as there were various other groups throughout the years who appeared before the Board, requesting similar changes in policy dealing with wasteful spending. See Exhibit A, pg. 44.

23.     Following Smith and Barton, Defendant Ed Norcross and Defendant Dr. Dana Baker came onto the School Board in 2013. See Exhibit A, pg. 47; See Exhibit V, pg. 16.  A true

copy of Defendant Dr. Dana Baker and Defendant Edward Norcross' transcripts have been attached hereto as **Exhibit F** and **Exhibit W**, respectively. See Exhibit W, pg. 6.

24.     When (or perhaps because) Norcross, Smith, and Baker became part of the School Board, there was increased friction between certain board members and district administration and disapproval from the electorate regarding the then-existing status quo. See Exhibit A., pg. 48; Exhibit F, pg. 16; Exhibit E, pgs. 12-13.

25.     In addition to wasteful spending, before the 2015 primary election run up and while Barton, Smith, Dr. Baker, and Norcross were in the "minority," these minority board members expressed dissatisfaction with the legal representation that the District was receiving from Plaintiffs. See Exhibit A, pg. 69; Exhibit F, pg. 57.

26.     These concerns lead, on March 26, 2014, to Defendant Ed Norcross making a motion to add an item to the Board agenda which would approve advertising a Solicitor Request for Proposals ("RFP") for the 2014-2015 School Year, which ultimately failed by a narrow 5-4 vote. See Exhibit B at #6.05; Exhibit W, pg. 25.  A true copy of the transcript from Defendant Alex Sharpe's deposition is attached hereto as **Exhibit G**.  See Exhibit G, pgs. 166-168; Exhibit W, pg. 36.

27.     As the 2014 RFP illustrates, before any of the alleged political activity as alleged in their Complaint was engaged in by Plaintiffs, the four Defendant board members who aligned themselves with the "Common $ense" faction in the 2015 election (and a vocal segment of the community), disapproved of "business as usual" as well as Plaintiffs' performance as Solicitor and wanted to change the status quo, which was perceived as including wasteful spending.

**The 2015 School Board Primary Election**

28. After the March 2014 attempt to add a motion to the board meeting agenda to pursue a Solicitor RFP failed, the School Board remained divided, with the Defendants Dr. Dana Baker, Ed Norcross, Carl Barton, and Joan Smith (the "minority" at the time) largely supporting an agenda which later came to be identified with the Common $ense group's agenda and Robert Floyd, Stanley Helman, Kim Amsley-Camp, and Phillip Miracle supporting what would become known as the Citizens for Value and Excellence in Education ("CVEE") agenda. See ECF 24, ¶¶ 35-36.  Board member Ann Boryan was not, per se, associated with either side.

29. The "Candidates for Common $ense" Political Action Committee ("PAC") was formed in 2015, prior to the May 2015 Primary School Board election and was comprised of a group of individuals who shared common opinions and were trying to bring a different perspective to the School District by being a catalyst for change. See Exhibit E, pg. 13, Exhibit F, pgs. 17, 100. A true copy of the transcript from Defendant Mark Schur's deposition is attached hereto as **Exhibit H**. See Exhibit H, pgs. 8-9.

30. The candidates who identified with the Common $ense agenda during the 2015 School Board election were Defendants Mark Schur, Alexander Sharpe (son of Jack Sharpe), Joan Smith, and William Lennartz. See ECF 24, ¶ 36.

31. Defendant William Lennartz decided to run for School Board in 2015 because he felt the District was headed in the wrong direction and he wanted to make a difference.  True and Correct copies of Mr. Lennartz's deposition transcripts have been attached hereto as **Exhibit AA**. See Exhibit AA, pg. 6.

32. Defendant Kevin Mintz was not a Candidate for Common $ense, but rather, ran as an independent candidate who shared concerns about wasteful spending.  A true copy of the

transcript from Kevin Mintz's deposition is attached hereto as **Exhibit O**. See Exhibit O, pg. 7, 31, 33.

33. Other objectives of the Common $ense members' were to change "business as usual" within the School District and to redirect where the District was going from an educational perspective, a change which had "overwhelming" public support. See Exhibit H, pg. 10; See Exhibit G, pg. 163; Exhibit F, pg. 32.

34. Plaintiffs, despite claiming that the concern about wasteful spending was a "pretext" for their release as Solicitor, fully acknowledge that the Common $ense platform was premised upon reducing wasteful spending within the District. See Exhibit A, pgs. 41-42. A true copy of the transcript of Plaintiff Jerrold Sulcove's deposition has been attached hereto as **Exhibit N**. See Exhibit N, pg. 24.

35. Perhaps the main issue at the forefront of this community desire for change was the ongoing, time-consuming, and costly litigation involving the School District's Assistant Principal, Cathy Dusman, who was represented by attorney Jack Sharpe, which grew to a total of four lawsuits and arose due to an error within Ms. Dusman's contract drafted by Black & Davison. See Exhibit A, pg. 100. A true copy of the transcript of School District Superintendent Dr. Joseph Padasak's deposition is attached as **Exhibit I**. See Exhibit I, pgs. 256, 272; Exhibit G, pgs. 79-80, 174.

36. The record shows a clear perception that not only did Plaintiffs error cause the Dusman matter, but that they encouraged the ongoing litigation despite untenable legal positions and they also billed the District a substantial amount of hours on the Dusman matters. True and correct copies of a sampling of Plaintiffs monthly billing statements relating to the Dusman litigation are attached as **Exhibit P**. See Exhibit P; See also Exhibit G, pgs. 79-80, 174.

37. Plaintiff Jan Sulcove, the managing partner of the Plaintiff law firm and the individual who was responsible for the firm's account/relationship with the District and did the most work at the firm for it (ECF 24, ¶ 20), was not a supporter of the Common $ense agenda, equating them to the "Tea Party." See Exhibit A, pg. 42.

38. Despite never previously censuring a board member during his 40+ year tenure as Solicitor, Jan Sulcove used his influence and power as District Solicitor to recommend and prepare censures for Ed Norcross, Dr. Dana Baker, and Joan Smith, who embodied the ideals and objectives of "Common $ense" even before it existed. See Exhibit A, pgs. 63-67.

39. The board members/seats which supported Jan Sulcove (e.g., 5 seats on the board) were up for reelection in 2015, which led to Mr. Sulcove's creation of the Citizens for the Value and Excellence in Education ("CVEE") PAC, which he openly and actively supported during the election as stated in Plaintiffs' Amended Complaint. See ECF 24, ¶¶ 39-43.

40. The candidates who ran under the CVEE ticket in 2015 were Stanley Helman, Kim Amsley-Camp, Stephen Gaugler, and Darrel Snyder. See ECF, ¶ 36.

41. Mr. Sulcove, however, was not merely a supporter of CVEE, but its driving force and most ardent supporter who openly targeted current Common $ense board members in an effort to advance the CVEE agenda. True and correct copies of communications evidencing the foregoing have been attached hereto as **Exhibit J**. See Exhibit J.

42. In addition to openly targeting current board members to advance the CVEE agenda, Jan Sulcove also frequently intermingled his solicitor duties/Black & Davison resources with his support for the CVEE. True and correct copies of communications evidencing the foregoing have been attached hereto as **Exhibit K**. See Exhibit K; See also Exhibit J.

{W0930418.1}

43. Jan Sulcove, despite claiming that Plaintiffs' release from solicitor was solely due to political affiliation, knew that the Common $ense members were dissatisfied with Black & Davison services as solicitor and he acknowledged that this contributed to the election being "hotly contested" from both sides of the political sphere. See Exhibit A, pg. 99.

44. This growing dissatisfaction with Black & Davison's performance in their role as District Solicitor is what led the Board, on March 25, 2015, in a 5-4 vote to approve a Request for Solicitor Proposals from interested law firms. A true and correct copy of the March 25, 2015 School Board meeting minutes has been attached hereto as **Exhibit L**. See Exhibit L, at #11.03.

45. Per Jan Sulcove, the RFP process was supposed to be an independent bidding process intended to secure independent competitive bids for the District Solicitor position and his involvement in the process was, per Sulcove, minimal. See Exhibit A, pgs. 175; 180-187.

46. However, a review of Jan Sulcove's email communications (exclusively to his CVEE supporters which he intentionally and specifically withheld from Common $ense affiliates) during this timeframe illustrates a manipulation of the RFP process by Black & Davison which turned it into a predetermined sham designed by Black & Davison to maintain their role, and perceived birthright, as District Solicitor in the face of mounting opposition. True and correct copies of communications evidencing the foregoing have been attached hereto as **Exhibit M**. See Exhibit M.

47. On May 19th, 2015, the Common $ense candidates *swept* the May primary election by wide margins and the general election was perfunctory for the primary winners; the winners of the primary election would eventually take office as new School Board Directors in December 2015.

48. As a result of Mr. Sulcove's extensive role in the 2015 RFP process, which he disavowed at his deposition, Black & Davison was approved as District Solicitor nine days after the May 27, 2015 primary election on a narrow 5-4 vote. See Exhibit A, pgs. 180-184.

49. That very same day, the lame duck board majority, on a 5-4 vote, selected Plaintiffs as the law firm who won the bid for solicitor and entered into a the contract which would bind the incoming board to Black & Davison as its Solicitor for the next 3 years. See a true copy of the March 27, 2015 three year Contract for Solicitor Services attached hereto as "**Exhibit C**". See also Exhibit G, pg. 146, 170; Exhibit V, pgs. 119, 139; and, Exhibit A, pgs. 96-97.

50. This contract was prepared by Plaintiff Jan Sulcove and was a "drastic" change in procedure and included limitations on the District's right to terminate Plaintiffs which Mr. Sulcove believed were acceptable, despite that such in fact contravened Pennsylvania law. Id.

51. At the time that the three year contract was entered into, Plaintiffs were aware that the Common $ense board members were incoming and that the board majority who chose Black & Davison would be soon gone. See Exhibit A, pg. 297-298.

**Black & Davison's Release from Solicitor Duties**

52. As a result of the May primary election results, the Common $ense board members were formally elected in the November 2015 general election and were then sworn into their board positions in December 2015.

53. As of December 2015, the School Board now consisted of a pro-Common $ense majority, intending to effectuate their desired changes, which, per Jan Sulcove, they immediately began to do. See Exhibit A, pg. 41.

54. Thereafter, on March 23, 2016 (and consistent with the renewal provision within Plaintiff's legal services contract), the new board, desiring a Solicitor who was not adversarial to

{W0930418.1}

them personally or their policy vision for the School District as approved by the electorate, voted unanimously to discontinue solicitor services with Black & Davison. See Exhibit D, #10.01.

55. As a result of their release from Solicitor duties, Plaintiffs filed the instant lawsuit alleging that their termination was a result of their "political affiliation" with, and support for, the CVEE ticket and that the well-documented and supported concerns about wasteful spending and deficient performance were pretextual. See generally ECF 24. However, there are no genuine facts of record which support this assertion.

56. Superintendent, Dr. Joseph Padasak, who himself donated to the CVEE campaign, indicated that Plaintiffs' were released from their solicitor duties due to the new board's perception over the quality and cost of legal services that Black & Davison were providing. See Exhibit I, pgs. 136, 189, 254.

57. Defendant Board Member Mark Schur indicated that his dissatisfaction with Black & Davison's legal counsel was formed as a member of the community prior to him being elected and did not change once he was elected into office. See Exhibit H, pg. 37.

58. Defendant Board Member Alex Sharpe indicated that the dissatisfaction he had with Black & Davison began in 2013 and was not a product of paying too much money for legal fees, but rather, wasting money in legal fees due to Plaintiffs legal acumen and the continual taking of positions that were "wildly unpopular" with the public and legally untenable. See Exhibit G, pgs. 65-67, 143, 163, 174.

59. Defendant Board Member Dr. Dana Baker indicated that the District Solicitor position had been discussed for two years prior to 2015, well before any political activity by Plaintiffs and that he did not have confidence in Plaintiffs' ability to perform their solicitor responsibilities. See Exhibit F, pg. 57, 79, 87-88.

60. Defendant Carl Barton had numerous concerns regarding Black & Davison's performance which influenced his vote, such as errors and omissions in contracts drafted by Plaintiffs (including Dusman), lengthy tax appeal cases, and the insulting way in which Mr. Jan Sulcove addressed Common $ense members. See Exhibit Z, pgs. 16-17, 21, 22, 24-25, 28, 89.

61. The genesis of Defendant Board Member Joan Smith's decision to release Plaintiffs began in 2012 and was the product of her being "repulsed" by Jan Sulcove's practices and his focus on his own "pocketbook" over the District's wellbeing. See Exhibit V, pg. 108, 119, 134, 136, 137, 141.

62. Defendant Board Member William Lennartz's vote had nothing to do with political affiliation, rather, Lennartz voted to release Plaintiffs from their role as District Solicitor because of their "ineffectiveness," citing a backlog of reverse tax appeals, as well as receiving legal advice which he disagreed with. See Exhibit AA, pgs. 18-21, 38.

63. Defendant Board member Ed Norcross originally made a Board motion to replace Plaintiffs as Solicitor in 2014, prior to any campaign activity, because he was dissatisfied with their services and performance, which continued into, and was the reason for, his 2015 decision to pursue the RFP. See Exhibit W, pg. 42, 43.

64. Defendant Board member Robert Floyd, who voted to renew Black & Davison in 2015, voted to not renew their contract in 2016 because, over time, he became more familiar with their record and effectiveness.  True and correct copies of Robert Floyd's deposition transcripts have been attached hereto as **Exhibit X**. See Exhibit X, pgs. 11-13.

65. Defendant Board Member, Kevin Mintz, who ran as an independent, also expressed the sentiment that the amount of money being spent on Black & Davison was "certainly part" of

the decision to release Plaintiffs from their role as District Solicitor, citing the continuation of lawsuits that resulted in "constant billing" from Black & Davison. See Exhibit O, pgs. 27, 31.

66. Expert John Freund, in reviewing these concerns related to Black & Davison's performance and billing practices states that "there were bona fide reasons outside of Black & Davison's affiliation with CVEE candidates" that gave Defendants the right to replace Black & Davison as School Solicitor. See Exhibit Y.

67. Perhaps most telling is that when asked during his deposition about the evidence which supports the claims within his Amended Complaint, Jan Sulcove was unable to cite any specific or genuine facts in support of his allegation that Plaintiffs were terminated for political purposes. See Exhibit A, pgs. 433-438.

68. The absence of evidence of personal knowledge on behalf of Plaintiffs that they were terminated because of their political activities/affiliation led to the production on the last day of the discovery deadline of two affidavits ostensibly authored by CVEE-supporters Stanley Helman and Phillip Miracle; a review of these affidavits illustrates they were drafted specifically with the intent of trying to create a material question of fact relative to Defendants' Motion for Summary Judgment.  True and correct copies of the affidavits of Stanley Helman and Phillip Miracle, along with relevant communications illustrating the sham behind them, have been attached hereto collectively as **Exhibit Q**.

69. These "sham affidavits" which were provided on the very last day of fact discovery and identify trial witnesses that Plaintiffs refused to identify previously (despite multiple previous requests for identification of any such witnesses), do not create any *genuine* issues of fact due to their generic reiteration of the Amended Complaint's allegations and complete lack of foundational support anywhere else in the record.

{W0930418.1}

70. What was supported throughout the entirety of the record, however, were the assertions that Black & Davison were released from their role as District Solicitor due to overwhelming opposition to their wasteful spending practices and deficient legal acumen.

71. In addition to CVEE supporters, Common $ense supporters, and independent candidates all giving extensive sworn deposition testimony on the reasons the new Board released Plaintiffs from their role as Solicitor, there are contemporaneous email communications during the timeframe reflecting this dissatisfaction with Black & Davison's legal practices and unsatisfactory performance. True and Correct copies of these communications have been attached hereto as **Exhibit R**. See Exhibit R.

72. As can be seen, these contemporaneous communications leading up to the election show a dissatisfaction with Plaintiffs' legal services from Common $ense members, community members, opposing counsel, and even CVEE supporters, Sylvia Rockwood and Billy Hodge, who acknowledge that Plaintiffs' practices centered around their financial gain. See Exhibit R.

73. Plaintiffs also allege that their release from their position as solicitor was further evidenced by Defendants "purging" the School District of CVEE supporters by targeting District employees Sylvia Rockwood, Burdette Chapel, and Kevin Weller. See ECF 24, ¶¶ 47-49.

74. However, Plaintiff Jan Sulcove could cite no evidence during his deposition which supported that Rockwood, Chapel, Weller or anyone else was released due to their support of CVEE and there are literally no facts of record which support this contention. See Exhibit A, pgs. 121-124; See also Exhibit I, pgs. 181, 248 (Rockwood left due to receiving an offer from the Carlisle Hospital and Chapel was considered a "lightning rod" who refused to abide by his supervisor). True and correct copies of correspondences evidencing these employees leaving for reasons other than being "purged" have been attached hereto as **Exhibit S**. See Exhibit S.

{W0930418.1}

75. Although the manner in which Jan Sulcove conducted himself as Solicitor clearly made political affiliation an appropriate consideration for the position, Plaintiffs release from their role as District Solicitor was due to a longstanding desire for change to the practices championed by Plaintiffs.

76. As such, Defendants respectfully assert that the grant of summary judgment is appropriate because no genuine issues of material fact that Plaintiffs were relieved of their duties as solicitor because of their political affiliation exists, regardless of whether the role of Solicitor for the Chambersburg Area School District in 2013-2015 was a policymaking position and regardless of the individual Defendants' qualified immunity.

Respectfully submitted,

**FOWLER HIRTZEL MCNULTY & SPAULDING, LLP**

**BY**: _____

Dated: June 10, 2019

Gregory S. Hirtzel, Esquire
I.D. # 56027
1860 Charter Lane, Suite 201
Lancaster, PA 17601
Phone: (717) 553-2604
Fax: (717) 344-5560
Email: ghirtzel@fhmslaw.com

{W0930418.1}

## **CERTIFICATE OF SERVICE**

I, Patricia L. Glasz, an employee of the law firm of Fowler, Hirtzel, McNulty & Spaulding, LLP certify that a true and correct copy of the foregoing document has been served upon the below individuals via e-filing as indicated on the date set forth below:

Mark B. Frost, Esquire
Mark B. Frost & Associates
1515 Market Street, Suite 1300
Philadelphia, PA 19102
*Attorneys for Plaintiffs*

**FOWLER HIRTZEL MCNULTY & SPAULDING, LLP**

BY: *Patricia L. Glasz*

Dated: June 10, 2019

Patricia L. Glasz, Pa.C.P.
Paralegal

{W0930418.1}